IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JO ANN JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:12cv411-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Plaintiff, Jo Ann Jackson, applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*, and supplemental security income ("SSI") payments under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Her disability insurance benefits application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which he found Plaintiff not disabled at any time through the date of the decision. Tr. 22. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 7); Def.'s Consent to Jurisdiction (Doc. 6). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?

---

Security matters were transferred to the Commissioner of Social Security.

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

### III.     ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty years old at the time of the hearing before the ALJ. Tr. 138. Plaintiff completed the eleventh grade. Tr. 147. Plaintiff's past relevant work experience was as a "prep cook." Tr. 143. Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since April 1, 2008, the amended onset date." (Step 1) Tr. 32. At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments: "depression; obesity; and substance abuse (in reported remission)." *Id.* The ALJ determined that Plaintiff's allegation of carpal tunnel syndrome "is not medically determinable." *Id.* The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 33. Next, the ALJ found that Plaintiff:

> has the residual functional capacity to perform medium work . . . except she is best suited for short, simple, 1 to 2 step tasks.

Tr. 34. The ALJ then concluded that Plaintiff "is capable of performing past relevant work as a prep cook which is medium, SVP2 work. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Step 4) Tr. 36. Accordingly, the ALJ determined that Plaintiff "has not been

under a disability, as defined in the Social Security Act, from June 15, 2006, through the date of th[e] decision." Tr. 36.[5]

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents three issues for this court's consideration in review of the ALJ's decision: 1) whether "[t]he Commissioner's decision should be reversed, because the ALJ's RFC assessment is not supported by substantial evidence as there is no evidence on the record to explain the ALJ's assessment of Plaintiff's physical limitations"; 2) whether "[t]he Commissioner's decision should be reversed, because the ALJ's mental RFC determination also lacks substantial support in which to base an administrative decision"; and 3) whether "[t]he Commissioner's decision should be reversed, because the ALJ failed to fulfill his duty to develop the record." Pl.'s Br. (Doc. 12) at 3. The court will address each argument below.

## V. DISCUSSION

### A. *Whether the ALJ's RFC assessment is supported by substantial evidence.*

Plaintiff's first two arguments challenge the ALJ's RFC determination, arguing that the RFC is not supported by substantial evidence as to either Plaintiff's physical or mental limitations.

At the administrative law judge hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). The ALJ must assess a claimant's RFC

---

[5] This appears to be a typographical error as the ALJ's opinion notes Plaintiff amended her alleged onset date at the hearing to April 1, 2008. Tr. 30; 4.

"based on all of the relevant medical and other evidence[,]" and, in general, the claimant will be responsible for providing the evidence used to make a finding about the RFC. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eleventh Circuit has held that the ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity. *See, e.g.*, *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (unpublished opinion) (finding the ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician); *see also Dailey v. Astrue*, 2012 WL 3206482, at *9 (S.D. Ala. July 18, 2012) ("an ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source." (citing *Griffin v. Astrue,* 2008 WL 4417228, at *10 (S.D. Ala. Sept. 23, 2008))).

  The court finds that the ALJ's RFC assessment is supported by the evidence of record in this case. As to Plaintiff's physical RFC determination, Plaintiff argues that there are no medical opinions of record because "[t]he only opinions of record regarding Ms. Jackson's remaining physical abilities despite her impairments are found at Exhibit 6F (Tr. 334-341). Exhibit 6F, however, was completed by a Single Decisionmaker (SDM)." Pl.'s Br. (Doc. 12) at 4. The ALJ's opinion notes that the conclusions of the

SDM "also supported a finding of 'not disabled.'" Tr. 35. However, the ALJ also noted that those physicians are non-examining and that while "their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions." Tr. 35. Thus, the ALJ did not rely on the opinion of the SDM, but simply noted that it supported other medical opinions of record. The court finds no error in the ALJ's analysis of the SDM's opinion. *See, e.g.*, *Carter v. Astrue*, 2012 WL 2135471, at *4 (M.D. Ala. June 13, 2012) (finding harmless error where an ALJ relied on a state agency RFC assessment he "acknowledge[d] . . . is that of a single decision-maker," and to which the ALJ assigned " 'little weight' to the extent that it differ[ed] from his own conclusions[,]" instead choosing to "assign[ ] 'greater weight to the treating and examining physician[s'] reports," because "the ALJ's express reasoning does not suggest that he 'essentially adopted the State Agency RFC'") (citing *Siverio v. Comm'r of Soc. Sec.,* 461 F. App'x 869 (11th Cir. 2012) (finding the ALJ's reliance on SDM's RFC assessment was not harmless error because "[t]he ALJ's opinion shows not only that the ALJ labored under the mistaken belief that [the SDM]'s RFC assessment had been authored by a physician, but also that he gave [the SDM]'s RFC assessment 'significant weight.' The remaining record evidence does not provide substantial evidence for the finding that [the plaintiff] was capable of performing medium work.")); *see also Stewart v. Astrue*, 2012 WL 1969318, at *6 (E.D. Pa. May 31, 2012)

("Even if there were a concern that the ALJ labored under the mistaken belief that the Physical RFC form at Exhibit 10F had been authored by a physician, the error would be harmless in light of the remaining record evidence providing substantial evidence for the finding that Stewart was capable of performing work at the light exertional level.") (citing *Siverio*, 461 F. App'x at 871-72)).

Moreover, in evaluating Plaintiff's physical limitations, the ALJ discussed a consultative examination performed by Dr. Popov in January 2010, stating that Dr. Popov opined that Plaintiff was:

> well developed, well nourished, alert, does not appear acutely ill, not in acute distress, cooperative and well groomed. The respiratory and cardiovascular examinations were normal. The cervical spine exam was normal, and only minimal point tenderness was found in the lumbar exam. The SI joints showed full range of motion without point tenderness (Exhibit 11F/6). The neurological exam was normal, except for 4/5 strength in all extremities. However, *this was attributed to poor motivation during the exam* (Exhibit 11F/7). While the claimant complained of carpal tunnel syndrome, no nerve conduction study has been performed, and Dr. Popov noted no problems with her upper extremities during the exam except for that previously noted. He noted the claimant was treated for depression which was poorly controlled. The physical diagnosis was unspecified backache, controlled, and carpal tunnel syndrome.

Tr. 34-35 (emphasis in original). Dr. Popov also opined that "[a]ll [of Plaintiff's] medical problems can effectively be treated." Tr. 386. Dr. Popov also completed a Physical CE sheet, which the ALJ "discounted since they appear to be based solely on subjective claimant provided information, rather than on the objective findings." Tr. 35. Indeed, Dr. Popov's notes state that "Pt claims she can sit for 1 hr, stand 15', walk 20 yards, does

not lift and carry since she was told not to(?) and can not travel [sic]." Tr. 386. Additionally, the ALJ noted "neither her treating physician nor the consultative examiner provided any credible work-related restrictions based on her physical complaints." Tr. 35. Based on this evidence, the ALJ limited Plaintiff to a "medium exertional level" of activity "[b]ased on the history of complain[t]s of back pain combined with obesity . . . to give the claimant every benefit of the doubt" and noted that "[t]here is a lack of any objective evidence, such as x-rays, to support any further reduction in the exertional level." Tr. 35. Thus, the court finds there was sufficient evidence on the record for the ALJ to determine Plaintiff's physical RFC.

As to Plaintiff's mental RFC, this too is supported by substantial evidence. "Agency regulations require the ALJ to use the 'special technique' dictated by the PRTF [Psychiatric Review Technique Form] for evaluating mental impairments." *Moore v. Barnhart,* 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a-(a)). "This technique requires separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'" *Id. (*quoting 20 C.F.R. § 404.1520a-(c)(3-4)). The ALJ is required "to complete a PRTF and append it to the decision, ***or incorporate its mode of analysis into his findings and conclusions***. Failure to do so requires remand." *Id.* at 1214 (citing other circuits for this holding). In this case, there is a PRTF form on the record, completed by Dr. Estock, and

while the ALJ does not address the form specifically, he did evaluate Plaintiff on all four functional areas and, thus, he did "incorporate its mode of analysis into his findings and conclusions." *See, e.g.*, *Bentley v. Astrue*, 2008 WL 4498963, at *4 (M.D. Ga. Sept. 30, 2008 (finding no error where "although the ALJ did not complete a PRTF, he did analyze and incorporate the PRTF's mode of analysis into his decision."). In this case, the ALJ found that Plaintiff has:  1) "*mild* restriction" in activities of daily living; 2) "*moderate* difficulties" in social functioning; 3) "*moderate* difficulties" with regard to concentration, persistence, or pace; and 4) experienced *no episodes* of decompensation of extended duration. Tr. 33 (emphasis added). The ALJ incorporated Plaintiff's mental restrictions, limiting her to "unskilled" work "[b]ased on her history of mental health treatment" and "short, simple, 1 to 2 step tasks." Tr. 34-35.

In challenging the ALJ's mental RFC assessment, Plaintiff contends that "the non-examining opinions of record expressed by Dr. Estock do not provide substantial support" and that because "the evidentiary record contains additional significant treatment from East Alabama Mental Health including 14 progress notes," then "the ALJ should have either requested Ms. Jackson's treating psychiatrist to express medical opinions or obtained an updated medical source opinion from an examining source." Pl.'s Br. (Doc. 12) at 7.  However, Plaintiff fails to allege what, if any, further limitations

are contained in these additional notes that are not accounted for in the ALJ's assessment.[6] Thus, this argument lacks merit.

Finally, in determining Plaintiff's RFC, the ALJ evaluated Plaintiff's credibility, noting that while, in October 2008, Plaintiff told her mental health provider she had been clean for 9 years, her testimony reflected she had only been off cocaine a number of months at that time. The ALJ, thus, determined this inconsistency "serves to diminish the credibility of the claimant's allegations." Tr. 35. The ALJ also noted Plaintiff's noncompliance with medications (Exs. 8F at 10 & 13F at 7).

Accordingly, upon review of the record, the court finds that the ALJ's RFC is supported by substantial evidence and Plaintiff's argument lacks merit.

### B.     *Whether the ALJ failed to fulfill his duty to develop the record.*

Next, Plaintiff argues that the ALJ failed in his duty to develop a full and fair record because he did not order objective medical testing to establish that Plaintiff suffers from carpal tunnel syndrome. Pl.'s Br. (Doc. 12) at 8. Plaintiff argues as follows:

> Despite the fact that Dr. Popov provided a diagnostic impression of **aggravated** carpal tunnel syndrome based upon his personal examination, the ALJ simply dismissed Ms. Jackson's carpal tunnel syndrome because "no nerve conduction study had been performed" (Tr. 35, 386). Before dismissing Ms. Jackson's carpal tunnel syndrome, however, the ALJ had a

---

[6] Dr. Estock completed both a Psychiatric Review Technique form and Mental RFC form in February 2009. Tr. 362-79. In the Psychiatric Review Technique form Dr. Estock opined Plaintiff has: 1) "*mild* restriction" in activities of daily living; 2) "*moderate* difficulties" in social functioning; 3) "*mild* difficulties" with regard to concentration, persistence, or pace; and 4) experienced *no episodes* of decompensation of extended duration. Tr. 372 (emphasis added). Thus, the ALJ's evaluation, which found moderate limitations in two areas, is actually more restrictive than Dr. Estock.

> duty to develop the record by obtaining such objective studies so as to allow himself to make an informed decision.

Pl.'s Br. (Doc. 12) at 8 (emphasis in original).

"[R]egardless of whether a claimant is represented by counsel, the ALJ 'has a duty to develop a full and fair record.'" *George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995)). Remand is not required, however, unless the administrative record as a whole is "inadequate or incomplete or 'show[s] the kind of gaps in the evidence necessary to demonstrate prejudice.'" *George,* 338 F. App'x at 805 (citing *Graham v. Apfel,* 129 F.3d 1420, 1423 (11th Cir. 1997)). "Even though Social Security courts are inquisitorial, not adversarial, in nature, *claimants must establish that they are eligible for benefits.* The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1269 (11th Cir. 2007) (emphasis added) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). "The regulations do not require the Commissioner to secure a consultative evaluation, nor do they create a right to a consultative examination." *Pike v. Astrue*, 2012 WL 2930780, at *5 (M.D. Ala. July 18, 2012).

The record in this case does not support Plaintiff's contention that the ALJ failed to develop the record by not ordering carpal tunnel testing. At the hearing, Plaintiff

testified that Dr. Atassi diagnosed carpal tunnel in both of her hands and told her she needs surgery, but that he could not recommend the surgery due to her lack of medical insurance.  Tr. 8.  However, no medical records support this statement.  The medical records from the Goodwater Clinic simply state "CTS – splint, refer."  Tr. 227.  Thus, the court finds the ALJ did not err in finding that "there is no support, other than claimant's oral history, regarding carpal tunnel syndrome, and this finding is discounted."  Tr. 35.

Moreover, the court notes that there already was a consultative examination—performed by Dr. Popov in 2010—on the record before the ALJ.  Dr. Popov's written opinion discussed Plaintiff's carpal tunnel syndrome by noting "Pt told by an MD 2 1/2 yrs ago that she had R CTS.  No nerve cond. study was done.  Pt did not follow up with doctor but continues to wear a wrist brace during the day.  Pt advised to take off the brace during the day and have follow up done with the M."  Tr. 386.  A review of Dr. Popov's notes suggests his "diagnosis" of "carpal tunnel syndrome - aggravated" reflects Plaintiff's self-reported complaints rather than his own diagnostic impression.  This is most evident in the fact that Dr. Popov's medical recommendations do not discuss Plaintiff's carpal tunnel syndrome.  The ALJ discussed and considered Dr. Popov's medical opinion, as described above, and discounted Plaintiff's allegations with respect to her carpal tunnel syndrome.  Thus, there was nothing further for the ALJ to do in developing the record with respect to Plaintiff's carpal tunnel syndrome.

## VI.    CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 27th day of September, 2013.

>  /s/ Wallace Capel, Jr.
>  WALLACE CAPEL, JR.
>  UNITED STATES MAGISTRATE JUDGE